IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMANDA S. FRAZER,                          :
                                           :     C.A. No: K16A-05-001 RBY
            Appellant,                     :     In and for Kent County
                                           :
      v.                                   :
                                           :
DELAWARE BOARD OF NURSING,                 :
                                           :
            Appellee.                      :


*Submitted: October 4, 2016*
*Decided: November 9, 2016*


*Upon Consideration of Appellant's Appeal from
the Delaware Board of Nursing*
AFFIRMED

**ORDER**


Amanda S. Frazer, *Pro se*.

Carla A.K. Jarosz, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware for Delaware Board of Nursing.


Young, J.

## SUMMARY

Amanda S. Frazer ("Appellant") appeals the two year suspension of her nursing license by the Delaware Board of Nursing ("the Board") and the Board's amendment of the Chief Hearing Officer's recommendation as to the length of her license suspension. The Board's decision was supported by substantial evidence, and Appellant has failed to raise a legal ground upon which this Court should overturn the Board's decision. Therefore, the decision of the Board is **AFFIRMED**.

## FACTS

Appellant was a licensed practical nurse with Kentmere Nursing and Rehabilitation Center ("Kentmere") from April 15, 2014 until January 4, 2015. Near the end of the Appellant's time, Kentmere investigated Appellant's distribution of medications to three separate patients. After confronting Appellant with its findings, Appellant resigned.

Kentmere found that the Appellant made numerous errors in her treatment of the three patients investigated. The three patients investigated were MW, BS, and RM.

With respect to patient MW, Kentmere found that, during a period between December 2, 2014, and December 29, 2014, Appellant withdrew Xanax 20 times without documenting administering it. Appellant also did not document administering MW Tramadol on three occasions. Furthermore, Appellant administered Tramadol at vastly different times from when she withdrew the medication and administered it contrary to MW's physician's order. On at least two occasions, Appellant administered Oxycodone in a manner inconsistent with

MW's physician's orders.

Kentmere noted multiple errors in administering medication to BS as well. Appellant administered Oxycodone-Acetaminophen to BS 26 times without documenting it. She administered Oxycodone-Acetaminophen to BS five times too early or too late. Appellant also administered the medication to BS in the wrong dosage three times and contrary to physician's orders on ten occasions.

Furthermore, Kentmere noted that Appellant made errors in treating RM. She administered two Oxycodone-Acetaminophen during times when RM did not report pain. She documented that she administered medications to RM at times during which she was not working. Appellant also failed to document her administration of controlled substances to RM at least 13 times.

Kentmere had various policies to which licensed practical nurses had to adhere. One policy required that nurses document all care given to patients, document that care during the shift in which the care is given, and correct entries that they document late. Another policy required that nurses, prior to administering medication, verify that the medication they administer will be given at the correct time, dose, and rate. Under this second policy nurses also were required to give medication to patients within the proper time frame.

On July 2, 2015, the Department of Justice filed a complaint with the Board asking that it impose such disciplinary action as it deemed appropriate. On February 5, 2016, after having a hearing, the Chief Hearing Officer found that Appellant engaged in unprofessional conduct, recommending that the Board suspend her license for a period not to exceed six months. After having

deliberations, the Board issued a final order on April 1, 2016, agreeing with the Chief Hearing Officer's recommended conclusions of law, but disagreeing with the recommended penalty. The Board suspended Appellant's license for two years. On May 2, 2016, Appellant appealed the Board's decision to this Court.

## STANDARD OF REVIEW

An appeal from an administrative board's final order to this Court is restricted to a determination of whether the Board's decision is free from legal error and supported by substantial evidence.[1] Evidence is substantial when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Questions of law are reviewed *de novo*.[3] This means that "the Court does not weigh the evidence, determine credibility, or make its own factual findings."[4]

## DISCUSSION

Appellant appeals the Board's decision on two bases. Appellant first claims that the Board's conclusion that Appellant engaged in unprofessional conduct is not supported by substantial evidence. Second, Appellant claims that the Board relied on a basis, for which it did not have proof, to amend the Chief Hearing

---

[1] 29 Del. C. § 10142(d); Department of Labor v. Duncan, 337 A.2d 308, 308-09 (Del. Apr. 11, 1975); Decker v. Del. Bd. of Nursing, 2013 WL 5952103, at *5 (Del. Super. Nov. 7, 2013).

[2] Walker v. Unemployment Ins. Appeal Bd., 2015 WL 1542034, at *1 (Del. Super. Mar. 12, 2015).

[3] *Id.*

[4] *Id.*

Officer's recommendation as to the length of Appellant's license suspension. Since the Board's conclusion that Appellant engaged in unprofessional conduct is supported by substantial evidence; and the Board's extension of Appellant's license suspension has a substantial and rational basis, is supported by substantial evidence, and free from legal error; the Board's decision is **AFFIRMED**.

## A. The Board's Conclusion that Appellant Engaged in Unprofessional Conduct is Supported by Substantial Evidence

Appellant argues that the Board's conclusion that she engaged in unprofessional conduct is not supported by substantial evidence. This Court will not find that facts are unsupported by substantial evidence unless they are "clearly unsupportable by the record."[5] The facts upon which the Board made its decision are not clearly unsupportable by the record. Therefore, the conclusion that Appellant engaged in unprofessional conduct is supported by substantial evidence.

A factual finding is clearly unsupportable by the record when the record contains only information that is contrary to the factual finding (cf *Ferguson v. Delaware Board of Nursing*). In this case, the Board punished a nurse for testing positive for marijuana after she had spent a few days around a family member who constantly smoked the drug.[6] The Board found that the nurse knew the risks of passive inhalation of marijuana, but did not remove herself from the situation.[7]

---

[5] Dye v. Merrit-Sparks, 2009 WL 3334908, at *4 (Del. Super. Aug. 31, 2009).

[6] Ferguson v. Del. Bd. Of Nursing, 2009 WL 4021230, at *1-3 (Del. Super. Aug. 20, 2009).

[7] *Id.* at 3.

The court held that this fact was not supported by substantial evidence, since the only evidence presented in the case was contrary to that factual finding.[8]

Unlike *Ferguson*, some evidence in the record supported the Board's finding in this case. In this case, all of the findings of fact, except for the policies, were quoted from the Appellant's employer's report documenting the findings of Kentmere's investigation in State's exhibit one. The findings of fact regarding the policies were paraphrases of the policies in State's exhibit one.[9] Since all of the factual findings have some basis in the record, the factual findings are supported by substantial evidence.

---

[8] *Id.*; *see also* Dye, 2009 WL 3334908 at 2-4 (holding that when evidence is presented supporting the Board's finding and a finding contrary to the finding of the Board the Board's finding is supported by substantial evidence).

[9] Pages five and six of State's exhibit one provide one of the policies upon which the findings of fact are based. In relevant part, this policy reads "every entry into the medical record will be dated, timed and signed. All care, planned and provided, will be entered into the medical record. It will be legible and timely. Progress notes should be entered within the shift when care occurred . . . . When incorrect entries are made on any part of the medical record or other facility forms, strike one line through the incorrect entry and date and initial that entry . . . ."

Pages eleven and twelve of State's exhibit one provide another polity upon which the findings of fact are based. In relevant part this policy reads "facility staff should verify each time a medication is administered that it is the correct medication, at the correct dose, at the correct rate, at the correct time, for the correct resident . . . . facility staff should take all measures required by facility policy and applicable law, including, but not limited to the following: . . . administer medications within time frames specified by facility policy; document the administration of controlled substances in accordance with applicable law."

**B.     The Board's Decision to Amend the Chief Hearing Officer's Recommendation as to Appellant's Suspension Length has a Substantial and Rational Basis, is Supported by Substantial Evidence, and is Free from Legal Error**

Appellant contends that the Board illegally changed the Chief Hearing Officer's recommended sentence length based on its unsubstantiated view that she diverted medications that she did not accurately document giving to patients. The Board is permitted to modify the Chief Hearing Officer's conclusions of law and proposed sanctions, so long as it bases its modification on the written record.[10] Any sanction modification that the Board makes must have a substantial and rational basis, be supported by substantial evidence, and be free from legal error.[11] Since the Board's sanction modification has a substantial and rational basis, is supported by substantial evidence, and is free from legal error the sanction modification is valid.

**1.  The Board's Sanction Modification has a Substantial and Rational Basis**

A sanction modification has a substantial and rational basis when it is necessary to protect patients.[12] In *Jain*, a supervisory nurse argued that her sanction was too harsh, considering the fact that a nurse she supervised received a much lighter sanction for the same conduct.[13] The court held that the supervisory

---

[10] 29 Del. C. § 8735(v)(1)(d).

[11] Jain v. Del. Bd. of Nursing, 2013 WL 3389287, at *7 (Del. Super. Feb. 13, 2013).

[12] *Id.*

[13] *Id.* at 4-5.

nurse's role as a supervisor combined with the need to protect patients provided a substantial and rational basis for the court's decision to sanction the supervisory nurse more severely than her subordinate nurse.[14] Similar to *Jain*, this case presents a situation in which the Board had to modify the sanction in order to protect patients. As such, the Board's decision in this case has a substantial and rational basis.

**2. The Board's Sanction Modification is Supported by Substantial Evidence**

As section A notes, the Board's decision is supported by substantial evidence.

**3. The Board's Sanction Modification is Free from Legal Error**

The Board's sanction is within the permissible sanctions for unprofessional conduct, and the Board was correct in determining that Appellant engaged in unprofessional conduct based on the findings of fact. Therefore, the Board's sanction modification is free from legal error.

**a. The Board may Impose a Two Year License Suspension for Appellant's Unprofessional Conduct**

The Board is permitted to impose a broad range of sanctions in the event that a nurse engages in unprofessional conduct.[15] Specifically, the Board may

---

[14] *Id.* at 6-7.

[15] "The Board may impose any of the following sanctions singly or in combination when it finds a licensee or former licensee is guilty of any offense described herein, except that the license of any licensee who is convicted of a felony sexual offense shall be permanently revoked . . . is guilty of unprofessional conduct as shall be determined by the Board, or the wilful neglect of a patient." 24 Del. C. § 1922(a)(8).

"permanently revoke a license to practice, suspend a license, censure a license, issue a letter of reprimand, place a licensee on probationary status, . . . refuse a license, refuse to renew a license, or otherwise discipline (the nurse)."[16] In this case, the Appellant's license was suspended for two years. Since 24 *Del. C.* § 1922(b) states that the Board has the power to suspend Appellant's license for unprofessional conduct, the suspension length is valid so long as the Appellant engaged in unprofessional conduct.

### b. Appellant Engaged in Unprofessional Conduct

The Board's regulations define unprofessional conduct. Nurses engage in unprofessional conduct when, among other things, they:

1) behave in a way that fails to conform to legal and accepted standards of the nursing profession and thus may adversely affect the health and welfare of the public;

2) assume duties and responsibilities within the practice of nursing without adequate preparation or without maintenance of competency;

3) inaccurately and willfully record, falsify, or alter a patient or agency record related to patient care, employment, or licensure;

4) divert, possess, obtain, supply or administer illegal drugs or prescription drugs to any person, including self, except, in the case of prescription drugs, as directed by a person authorized by law to prescribe drugs;

---

[16] 24 Del. C. § 1922(b).

5) fail to take appropriate action or to follow policies and procedures in the practice situation designed to safeguard the patient.[17]

Appellant was unprofessional in each of the five ways noted above. Therefore, Appellant's sanction modification is free from legal error.

*I. Appellant Behaved in a way that Fails to Conform to Legal and Accepted Standards of the Nursing Profession*

Since Appellant failed to conform to legal and accepted standards of the nursing profession, Appellant engaged in unprofessional conduct. One accepted standard in the nursing profession is that licensed practical nurses must "document nursing interventions and outcomes."[18] The factual findings indicate that, at times, Appellant did not document the medications that she gave to patients. Therefore, she failed to follow legal and accepted standards of the nursing profession.

*II. Appellant Assumed Duties and Responsibilities Within the Practice of Nursing Without Adequate Preparation or Without Maintenance of Competency*

Since Appellant assumed duties and responsibilities within the practice of nursing without adequate preparation or without maintenance of competency, Appellant engaged in unprofessional conduct. Just as the Chief Hearing Officer noted, Appellant showed an inability to document and administer medications properly during the last three months of her employment with Kentmere. Nevertheless, Appellant continued to perform her duties. This constitutes assuming responsibilities without maintenance of competency.

---

[17] 24 Del. Admin. Code 1900-10.4.

[18] 24 Del. Admin. Code 1900-7.5.

*III. Appellant Inaccurately and Willfully Recorded an Agency Record Related to Patient Care*

Since Appellant inaccurately and willfully recorded an agency record related to patient care, Appellant engaged in unprofessional conduct. The findings of fact note that appellant reported administering medications when she was not on duty, and did not report administering medications at all in certain situations. Therefore, she engaged in unprofessional conduct.

*IV. Appellant Administered Prescription Drugs in a Manner Inconsistent with the Direction of a Person Authorized by Law to Prescribe Drugs*

Since Appellant administered prescription drugs in a manner inconsistent with the direction of a person authorized by law to prescribe drugs, Appellant engaged in unprofessional conduct. The findings of fact indicate that the Appellant administered Oxycodone and Oxycodone-Acetaminophen in quantities that were inconsistent with the doctor's prescription. Therefore, Appellant engaged in unprofessional conduct.

*V. Appellant Failed to Follow Policies and Procedures in the Practice Situation Designed to Safeguard the Patient*

Since Appellant failed to follow policies and procedures in the practice situation designed to safeguard the patient, Appellant engaged in unprofessional conduct. Kentmere had policies mandating that nurses document all care given to patients; document that care during the shift in which the care is given; correct entries later documented; prior to administering medication, verify that the medication they administer will be given at the correct time, in the correct dosage, and at the correct rate; and give medication to patients within the proper time

frame. Appellant failed to document her administration of medication, administering patients medication contrary to their doctors' prescriptions. Therefore, Appellant failed to follow policies and procedures designed to safeguard the patient and engaged in unprofessional conduct.

### **CONCLUSION**

For the foregoing reasons, the Board's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ Robert B. Young
J.

RBY/lmc
*Via File & ServeXpress*
oc:    Prothonotary
cc:    Counsel
       Amanda S. Frazer (*via U.S. Mail*)
       Opinion Distribution